**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

CHERYL HARRIS,                          *
                                        *
        Plaintiff,                      *        CIVIL ACTION NO. 13-00481-KD-B
                                        *
vs.                                     *
                                        *
CAROLYN W. COLVIN,                      *
Commissioner of Social                  *
Security,                               *
                                        *
        Defendant.                      *

### REPORT AND RECOMMENDATION

Plaintiff Cheryl Harris (hereinafter "Plaintiff"), who is proceeding *pro se*, seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.* This action was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of the administrative record and memoranda of the parties, it is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

### I.   Procedural History

Plaintiff protectively filed an application for a period of disability, disability insurance benefits, and supplemental security income on March 28, 2011.  (Tr. 122).  Plaintiff

alleged that she has been disabled since March 18, 2011, due to diabetes, arthritis, hearing loss, anxiety, depression, and heart problems. (Id. at 100, 138). Plaintiff's applications were denied and upon timely request, she was granted an administrative hearing before Administrative Law Judge Renee Blackmon Hagler (hereinafter "ALJ") on June 20, 2012. (Id. at 27). Plaintiff attended the hearing, *pro se*, and was apprised of her right to have counsel. She elected to proceed without counsel and provided testimony related to her claims. (Id. at 30, 32). Plaintiff's landlord/friend, as well as a vocational expert ("VE"), also appeared at the hearing and provided testimony. (Id. at 42-43). On July 24, 2012, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 23). Plaintiff submitted additional correspondence to the Appeals Council, which the Appeals Council considered before denying review on September 7, 2013.[1] (Id. at 1-2, 4). Thus, the ALJ's decision dated July 24, 2012, became the final decision of the Commissioner. Having exhausted her administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). The parties agree that this case is now ripe for judicial review and is properly before this Court

---

[1] The Appeals Council found that the additional information submitted by Plaintiff did not provide a basis for changing the ALJ's decision. (Tr. 1-2).

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**II.  Issues on Appeal**

> **A.  Whether substantial evidence supports the ALJ's RFC assessment?**
>
> **B.  Whether the ALJ erred in not ordering a consultative examination?**

**III. Factual Background**

Plaintiff was born on February 27, 1963, and was forty-nine years of age at the time of her administrative hearing on June 20, 2012.  (Tr. 27, 32).  Plaintiff testified that she completed the tenth grade in high school.  (Id. at 33).  Plaintiff also testified that she last worked as a short order cook, a job she held for approximately eleven years.[2]  (Id. at 34).  Plaintiff also worked as a cashier from 1997 to 1999 and as a stocker from 1993 to 1996.  (Id. at 34-35, 161).  According to Plaintiff, she drives, shops, goes to church, cooks, handles her own personal care needs, including bathing, performs household chores such as laundry, washing dishes, making beds and cleaning the bathroom, and handles her own finances.  (Id. at 34, 39-41).  Plaintiff's interests include watching television and working puzzle books.  (Id. at 41).

---

[2] The record shows that Plaintiff last worked at her job as a cook on March 18, 2011.  (Tr. 138-39).  She filed her applications for disability benefits ten days later, on March 28, 2011.  (Id. at 122).

Plaintiff testified that she stopped working in March 2011 and is unable to work because of pain in her arms and legs, uncontrolled diabetes, and depression. (Id. 34, 36-39). Plaintiff also testified that her medications include Neurontin (for arm and leg pain),[3] Metformin and Glipizide (for diabetes), Digoxin (for her heart), Prozac (for depression), and Aleve (for pain). (Id. at 36-37). Plaintiff did not report any side effects from her medications.

## IV. **Analysis**

### A. **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[4] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that

---

[3] Plaintiff testified that Neurontin helps her arm and leg pain "a little bit," but at the time of the hearing, she was no longer taking it because she had run out. (Tr. 37). She further testified that her diabetes medications, Metformin and Glipizide, do not have her diabetes completely under control, and Prozac has not made her depression much better. (Id. at 37-39). However, with respect to Plaintiff's heart medication, she testified that she has not had a problem "in a long time." (Id. at 39).

[4] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

of the Commissioner. _Sewell v. Bowen_, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. _Brown v. Sullivan_, 921 F.2d 1233, 1235 (11th Cir. 1991); _Bloodsworth v. Heckler_, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. _Chester v. Bowen_, 792 F. 2d 129, 131 (11th Cir. 1986); _Short v. Apfel_, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

### B. **Discussion**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); _see also_ 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations

provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[5]  20 C.F.R. §§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since March 18, 2011, the alleged onset date, and that she has the severe impairments of diabetes mellitus, depression, supraventricular tachycardia, and bilateral hearing loss.  (Tr. 16).  The ALJ further found that Plaintiff does not have an impairment or

---

[5] The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments.  If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  Id.  Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).  See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at 18).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform light work, except that "she should avoid work at unprotected heights and with dangerous machinery, avoid ordinary hazards in the workplace due to hearing loss and she should not work in positions requiring fine hearing such as using a telephone. Mentally, she is able to perform simple tasks with short simple instructions, deal with infrequent changes to the workplace, and attend to tasks for 2-hour periods." (Id. at 19). The ALJ also determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not credible to the extent that they were inconsistent with the RFC. (Id. at 20).

Given Plaintiff's RFC, the ALJ found that Plaintiff is capable of performing her past work as a cashier. (Id. at 21). Alternatively, utilizing the testimony of a VE, the ALJ concluded that considering Plaintiff's residual functional capacity for a range of light work, as well as her age, education and work experience, there are also other jobs

existing in the national economy that Plaintiff is able to perform, such as "laundry folder," "office helper," and "cafeteria attendant," all of which are classified as light and unskilled. (Id. at 22). Thus, the ALJ concluded that Plaintiff is not disabled. (Id.).

In determining that Plaintiff is not disabled, the ALJ made the following relevant findings:

> The claimant has alleged disability due to diabetes, arthritis, hearing loss, heart problems, anxiety and depression. At the hearing, Ms. Harris testified that her diabetes is still not controlled and causes problems with hearing, eyesight and concentration. She stated she hurts constantly in her joints. She also said she still has heart problems. The claimant reported she could walk about 10 minutes, stand about 15 minutes, sit 30 minutes (but her back and neck hurts), pick up 2 pounds, and lift a gallon of milk. She said she could not climb stairs, bend, or squat. The claimant testified she is depressed, stays home all the time, and has nobody to talk to. She said she was not much better when she took Prozac.
>
> The medical evidence reveals the claimant was followed at the Tri County Medical Center for diabetes mellitus, a history of hyperlipidemia, and a history of palpitations. Home Accu-cheks were fine and random blood sugars were within normal range. There were no focal neurological deficits. Physical examinations remained normal. The claimant was advised on numerous occasions to stop smoking. She has a history of bilateral sensorineural hearing loss that was treated with hearing aids (Exhibit 1F). Treatment records indicate a weight loss problem, but chest x-ray, CT scan of lab

work was unremarkable. The claimant had problems in March 2011 with dizziness and low blood pressure. The assessment was supraventricular tachycardia (SVT). However she had no complaints of chest pain, shortness of breath, bowel or urinary complaints. After medication change, her blood pressure stabilized. Her random blood sugars remained normal. She was admitted in June 2011 for SVT, hypotension secondary to dehydration or hypoaldosteronism, chronic cholecystitis and abnormal liver. She underwent laparoscopic cholecystectomy, which showed no significant pathology and no stones. A liver biopsy was benign and negative for hepatitis and cirrhosis. She was discharged in stable condition (Exhibit 9F, pp. 99-103). By November 2011, she had gained some weight. The claimant was admitted in December 2011 with a blood sugar over 500. She was diagnosed with nonketotic hyperglycemia. Insulin was started and her blood sugars dropped to 200 (Exhibit 9F, pp. 58-97). Blood-pressure in January 2012 was 102/71 and physical exam was unremarkable. Home Accu-cheks were in the 100's. Physical examination in March 2012 reveals a blood pressure of 102/68, height of 5 feet 5 inches, and weight of 130 pounds. She had normal gait. Respiratory and cardiovascular exam was completely normal. There was no extremity edema. She had normal range of motion of the spine, no joint tenderness or joint swelling, and straight leg raising test was negative bilaterally. She was alert and responsive. Sensation and reflexes were normal. There was no muscle weakness (Exhibits 2F and 8F).

In the meantime, the State agency obtained a consultative ENT examination and audiological assessment from Dr. Barry L. Brown in May 2011. Ms. Harris said that her hearing aids help her a lot. She reported that she had developed problems with blood pressure and diabetes. She said she cannot walk very far because her legs will draw

tight and her knees will hurt. She stated she was told it is because she has low body fat. The claimant also indicated she has a place on her back that bothers her. She said her hands are very definitely weak and it is difficult to open a jar. Overall, she looked much older than her stated age of 48. She did have bilateral hearing aids. The ears looked good. Her nose and mouth were fine. Audiogram showed an SRT of 75 dB in the right with 64% discrimination and 70 dB in the left with 64% discrimination Dr. Brown felt she has a bad sensorineural hearing loss with maybe some peripheral neuropathy issues that may be diabetic related (Exhibit 7F).

The claimant's medical record was also reviewed by a state agency single decision maker who determined that she was capable of work activity not requiring lifting and carrying more than 20 pounds occasionally or 10 pounds frequently; sitting, standing, or walking more than 6 hours each out of an 8 hour day; no climbing of ladders, ropes, or scaffolds; frequently climbing ropes and stairs, balancing, stooping, kneeling, crouching and crawling; limited in hearing; no concentrated exposure to noise, vibration or hazards such as unprotected heights or dangerous/moving machinery (Exhibit 3A).

Records from the Tri County Medical Center indicate the claimant also has a history of treatment for intermittent complaints of anxiety and/or depression, as well as insomnia. No significant findings were noted in examination she was reported to be alert and oriented times three. Ms. Harris was treated with Fluoxetine, Xanax, Prozac and Tramadol (Exhibits 2F and 8F).

State agency mental health experts reviewed the claimant's records and determined that she had a mild to moderate degree of functional limitations, but was still able to understand, remember, and carry out very

short and simple instructions; attend for
two hour periods; and adapt to only limited
changes in work duties (Exhibits 5F-6F).

(Id. at 16-18).

In determining that Plaintiff did not meet any Listing, the

ALJ also made the following relevant findings:

> **The claimant does not have an impairment or
> combination of impairments that meets or
> medically equals the severity of one of the
> listed impairments in 20 CFR Part 404,
> Subpart P, Appendix 1 (20 CFR 404.1520(d),
> 404.1525, 404.1526, 416.920(d), 416.925 and
> 416.926).**
>
> . . . The undersigned has reviewed all of
> the claimant's impairments under the
> appropriate sections of the Listing of
> Impairments and finds that her impairments,
> whether considered individually or in
> combination, do not meet or equal the level
> of severity set forth in any of the Listing
> of Impairments. The undersigned has
> specifically considered the Endocrine
> Listings at Section 9.00, the Mental
> Disorder Listings at Section 12.00, the
> Cardiovascular Listings at Section 4.00, and
> the Special Senses and Speech Listings at
> Section 2.00. However, the claimant's
> impairments do not rise to the level of
> severity described in any of these listing
> sections, nor has any treating or examining
> physician mentioned findings equivalent in
> severity to any listed impairment. . . .
>
> In this case, all of the pertinent exhibits
> have been reviewed and the claimant's
> testimony has been fully considered. The
> overall record fails to show any evidence of
> significant deficits in *daily functioning*
> due to mental disorders. The claimant
> testified and reported that she lives alone
> and is still capable of taking care of her
> personal grooming/hygiene, preparing simple

meals and completing household chores such as washing dishes, doing laundry, sweeping, vacuuming, making her bed, and cleaning the bathroom. In addition, she goes outside every day and has no problems driving.

In the area of *social functioning*, the claimant reported she has no problems getting along with others. The record shows that the claimant retains the capacity to interact appropriately and communicate effectively with others, as she goes shopping, talks on the telephone everyday and has no problems functioning in the public domain in such places as doctor's offices (Ex. 2E). In addition, she demonstrated no abnormal social behaviors during the hearing.

As to *concentration, persistence, or pace*, the record contains no evidence that the claimant's concentration skills do not allow for the completion of simple, one and two-step instructions. At the hearing, she was able to understand and follow the hearing proceedings and all lines of questioning. The claimant was not in any special education classes (Ex. 3E). The record shows that she has no problems following television programs or completing a wide range of household responsibilities. Therefore, she has demonstrated the ability, at least, to successfully perform simple, routine, one to two step tasks.

Finally, there is no evidence of repeated *episodes of decompensation*. (Listing of Impairments, § 12.00(C)(4)). Accordingly, the undersigned finds that the claimant's mental impairments have resulted in mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation.

(Id. at 18-19) (emphasis in original).

In addition, in assessing the Plaintiff's RFC, the ALJ made the following relevant findings:

> The residual functional capacity determined in this decision is consistent with the overall medical evidence and the claimant's hearing presentation. After careful consideration of the entire record, the undersigned finds no evidence to support a finding of total disability based on any physical or mental impairment. While the claimant may experience some "mild to moderate" level of discomfort or other symptoms related to her diagnosed conditions, the record fails to support the degree of pain and functional limitations alleged. The claimant's treatment has all been conservative in nature with no referrals for surgery or other aggressive measures. All of her clinical and diagnostic examinations have been relatively unremarkable with no documentation of any abnormality, which could reasonably be expected to result in total disability. The claimant has diabetes that is only moderately controlled at times. She had an episode in December 2011 where she was hospitalized with sugar levels over 500. Ms. Harris was started on insulin, which has helped stabilize her blood sugar. The claimant reports occasional problems with neuropathy, but is not on any treatment currently. In addition, physical examinations continue to show no neurological deficits. She had been on Neurontin that helped with the problems, but she states she is unable to afford now. The record demonstrates the claimant has bilateral hearing loss but she reports her hearing aids help a lot. She has had episodes of SVT, which is currently controlled with medications. Based on review of the entire record, the claimant's allegations and contentions regarding the

nature and severity of the impairment-
related symptoms and functional limitations
are found to be partially credible. While
the allegations regarding the nature of
these symptoms are found to be supported
within the medical and other evidence in
file, the contentions regarding the severity
of, and the related functional restrictions,
are not supported. The findings specified
within the assessment noted above are more
consistent with the appropriate medical
findings and the overall evidence in the
file then the allegations made by the
claimant.

Likewise, there is nothing in the evidence
probative to a finding of disability based
on any psychological disorder. Ms. Harris
receives treatment from her primary care
physician for intermittent complaints of
depression/anxiety. However, she has not
had, sought, or been referred for _formal_
mental health treatment. There is no
longitudinal history of formal psychological
treatment and no history of psychiatric
hospitalizations. From a discrete mental
perspective, the claimant's objective
findings did not support a disabling level
of mental restrictions. Based on objective
findings and history she would be considered
capable of performing the basic mental
demands of competitive, remunerative, and
unskilled work.

(Id. at 20-21) (emphasis in original). The Court now considers

the foregoing in light of the record in this case and the issue

on appeal.

##### 1. Issues

**Whether substantial evidence supports
the ALJ's RFC assessment?**

Plaintiff, proceeding *pro se*, argues that the ALJ's finding

that she retained the RFC to perform a range of light work, conditioned upon the previously stated restrictions[6] (id. at 19), is not supported by substantial evidence. In addition, Plaintiff argues that the ALJ erred in not obtaining a consultative mental examination.[7] (Doc. 17 at 3). The Commissioner counters that the ALJ properly decided Plaintiff's RFC based on her medical records, the opinions of State Agency psychologist Joanna Koulianos, Ph.D., and the opinions of consultative ENT specialist Dr. Barry Brown and that the ALJ's RFC determination is supported by substantial medical evidence in the record. (Doc. 23 at 8, 13). Having reviewed the record at length, the Court agrees that Plaintiff's claims are without merit.

Residual functional capacity is a measure of what Plaintiff can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's residual functional

---

[6] As discussed above, the ALJ conditioned Plaintiff's RFC for light work upon her avoiding work at unprotected heights, with dangerous machinery, with ordinary hazards in the workplace due to hearing loss, and with positions requiring fine hearing, and upon her performing only simple tasks with short simple instructions, dealing with infrequent changes to the workplace, and attending to tasks for two-hour periods. (Tr. 19).

[7] Plaintiff is correct that the ALJ did not order a consultative mental examination. However, the record does contain the opinion of State Agency psychologist Dr. Joanna Koulianos, Ph.D., who reviewed Plaintiff's medical records and completed a Psychiatric Review Technique and a Mental RFC Assessment, discussed herein. (Tr. 204, 218).

capacity are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his impairments, and must be supported by substantial evidence.  See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012).  Once the ALJ has determined the Plaintiff's residual functional capacity, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence.  See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985).  Plaintiff has failed to meet her burden in this case.

As previously stated, the ALJ concluded that, although Plaintiff has the severe impairments of diabetes mellitus, depression, supraventricular tachycardia, and bilateral hearing loss, she is not disabled.  (Tr. 16, 22).  In making this determination, the ALJ relied primarily upon the records of Plaintiff's treating physician, Dr. Sandeep Bhadkamkar, the report of consultative ENT specialist Dr. Barry Brown,[8] and the Psychiatric Review Technique form and Mental RFC assessment

---

[8] The record shows that Dr. Brown was also Plaintiff's treating physician, having diagnosed her in July 2009 with "bilateral sensorineural hearing loss," for which he recommended hearing aids.  (Tr. 177).

completed by State Agency Psychologist Dr. Joanna Koulianos, Ph.D. (Id. at 17-21). As the ALJ found, this evidence confirms that Plaintiff's impairments in this case are not disabling in nature.

First, as the ALJ found, the record shows that Dr. Bhadkamkar began treating Plaintiff in March 2009 for diabetes, a history of hyperlipidemia,[9] anxiety, and heart palpitations. (Id. at 194). At that time, Plaintiff reported no history of anxiety or depression or exertional chest pain, and she was on no medications. (Id. at 193). Dr. Bhadkamkar's treatment notes reflect a normal examination, with the exception of slight hearing loss and elevated blood sugar. (Id. at 194). Dr. Bhadkamkar advised Plaintiff to stop smoking and prescribed Glipizide (for diabetes), Verapamil (for high blood pressure), and Alprazolam (for anxiety). (Id.). Over the next year, Plaintiff's examinations remained essentially normal, and Dr. Bhadkamkar consistently noted that Plaintiff's home AccuChecks were "doing well." (Id. at 189-92). In March 2010, Plaintiff reported that she had ceased doing home AccuChecks, and Dr. Bhadkamkar noted that her diabetes was "currently controlled." (Id. at 188). During that visit, Plaintiff reported feeling anxious, and Dr. Bhadkamkar prescribed Xanax. (Id.). In July

---

[9] Hyperlipidemia is the medical term for high blood cholesterol. See http://www.nlm.nih.gov/medlineplus/ency/article/000403.htm.

2010, Plaintiff's examination again was essentially normal, although she reported pain in her neck over the past few days and feeling depressed. (Id. at 186). Dr. Bhadkamkar prescribed Darvocet, Xanax, and Lexapro, as well as Lescol (for high cholesterol) and Metformin (for diabetes). (Id.). In October 2010, Dr. Bhadkamkar again noted that Plaintiff's diabetes was "currently controlled" with medication. (Id. at 185). At that time, Plaintiff reported numbness in her hands and feet, and he prescribed Neurontin.[10] (Id.).

In January 2011, Plaintiff's examination was again completely normal, as it was two months later in March 2011, although Plaintiff complained of feeling depressed and having pain "from head to toe." (Id. at 183-84). On March 23, 2011, Dr. Bhadkamkar noted that chest x-rays, a CT scan, and lab work were all unremarkable.[11] (Id. at 183). In May 2011, Plaintiff presented to the emergency room with complaints of dizziness and was assessed with hypoglycemia (low blood sugar) and hypotension (low blood pressure). (Id. at 234, 278, 281, 293). Dr. Bhadkamkar examined Plaintiff during follow up visits in May,

---

[10] Also, in October 2010, x-rays of Plaintiff's chest taken showed normal heart and lungs, with the exception of "hyperexpanded lungs" suggestive of possible COPD. X-rays of the thoracic and lumbar spine were completely normal. (Tr. 250-52).

[11] Plaintiff filed her applications for disability benefits five days later, on March 28, 2011. (Tr. 122).

July, and November 2011. His findings were essentially normal, with the exception of low blood pressure. (Id. at 232-34). Dr. Bhadkamkar also noted that Plaintiff's blood sugar was "doing fine." (Id. at 232).

In January 2012, following a hospital admission for high blood sugar, Dr. Bhadkamkar noted that Plaintiff's diabetes was uncontrolled. (Id. at 231). He prescribed Metformin, Verapamil (or "Calan"), and Prozac. (Id.). In March 2012, Dr. Bhadkamkar's treatment notes reflect that Plaintiff's blood sugar had returned to normal with medication, and her physical examination was completely normal. (Id. at 228). Dr. Bhadkamkar's treatment records, as detailed herein, support the ALJ's determination that Plaintiff's impairments were controlled with medication and were not disabling in nature, and that Plaintiff was capable of performing light work.

The ALJ's RFC assessment for a range of light work is further supported by the May 2011 report of consultative ENT specialist, Dr. Barry Brown, who diagnosed Plaintiff with "sensorineural hearing loss" with possible "peripheral neuropathy issues." (Id. at 224). Dr. Brown specifically noted that "Plaintiff feels that [her] hearing aids help her a lot." (Id.). The ALJ's RFC conditions, which included that Plaintiff should avoid "ordinary hazards in the workplace due to hearing loss and . . . should not work in positions requiring fine

hearing such as using a telephone," accommodate the limitations imposed by this impairment. (Id. at 19).

Likewise, the May 2011 Mental RFC assessment and Psychiatric Review Technique form completed by State Agency psychologist, Dr. Joanna Koulianos, further supports the ALJ's RFC assessment with respect to Plaintiff's mental impairment. (Id. at 204, 218). As the ALJ noted, Dr. Koulianos found that Plaintiff's affective and anxiety-related disorders were severe but that Plaintiff had only a mild restriction in activities of daily living and maintaining social functioning, moderate difficulty in maintaining concentration, persistence, or pace, and no episodes of decompensation. (Id. at 214). Dr. Koulianos opined that Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions, her ability to maintain attention and concentration for extended periods of time, and her ability to respond appropriately to changes in the work setting but that she was not significantly limited in any of the remaining sixteen functional categories. (Id. at 218-19). Dr. Koulianos further opined that Plaintiff retained the ability to understand, remember, and carry out very short and simple instructions and that she could attend for two-

hour periods, although changes in her work duties should be limited.[12] (Id. at 220).

The Eleventh Circuit has held that an ALJ is "required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'" Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)). "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources." Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)). In this case, Dr. Koulianos' opinions do not conflict with the opinions of any examining sources. Thus, the ALJ properly afforded Dr. Koulianos' opinions substantial weight. (Tr. 21).

The ALJ's RFC assessment is also supported by Plaintiff's testimony at her hearing regarding her activities of daily living. Plaintiff testified that she drives, shops, goes to church, cooks, handles her own personal care needs, such as bathing, performs household chores including laundry, washing dishes, making beds and cleaning the bathroom, and handles her

---

[12] The ALJ's RFC assessment accommodated these mental limitations by restricting Plaintiff's work to "simple tasks with short simple instructions," "infrequent changes to the workplace," and attending to tasks for only 2-hour periods. (Tr. 19).

own finances. (Id. at 34, 39-41). This evidence belies Plaintiff's claim that her diabetes, depression, heart problems, and hearing loss are disabling in nature.

Having reviewed the record at length, the Court finds, as the ALJ found, that Plaintiff's treatment has been conservative in nature, that her medical conditions have been consistently stabilized and controlled with medication, and that her clinical examinations and diagnostic tests have been generally unremarkable. Nothing in the record contradicts the ALJ's RFC assessment. To the contrary, Plaintiff's treatment records, as well as the opinion evidence of consultative ENT specialist Dr. Barry Brown and State Agency psychologist Dr. Joanna Koulianos, support the ALJ's assessment.

### 2. Whether the ALJ erred in not ordering a consultative mental examination?

As noted *supra*, Plaintiff argues that the ALJ erred in not obtaining a consultative mental examination in light of her diagnosis of depression and anxiety. Upon consideration, the Court finds no error. It is well established that a hearing before an ALJ in social security cases is inquisitorial and not adversarial. A claimant bears the burden of proving disability and of producing evidence in support of her claim, while the ALJ has "a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam);

see also Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007). This duty to develop the record exists whether or not the claimant is represented by counsel. Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995).

42 U.S.C. 421(h) provides that "in any case where there is evidence which indicates the existence of a mental impairment," a determination that a claimant is not disabled "shall be made only if the Commissioner . . . has made every reasonable effort to ensure that a qualified psychiatrist or psychologist" has offered an opinion or reviewed the record. Id. In McCall v. Bowen, 846 F.2d 1317, 1320 (11th Cir. 1988), the Eleventh Circuit stated that where there is evidence indicating the existence of a mental impairment, the Commissioner may determine that the claimant is not under a disability only if the Commissioner has made "every reasonable effort to obtain the opinion of a qualified psychiatrist or psychologist." Id. (quoting 42 U.S.C. § 421(h) (internal quotation marks omitted). Later, in Sneed v. Barnhart, 214 F. Appx. 883, 886 (11th Cir. 2006) (unpublished), a panel of the Eleventh Circuit stated that "McCall interprets § 421(h) [to] require[] an ALJ to order a psychological consultation where there is evidence of a mental impairment." Id.

However, the ALJ is not required to order a consultative examination where the record contains sufficient evidence to

permit the ALJ's RFC determination. Ingram, 496 F.3d at 1269 ("The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision."); see also Good v. Astrue, 240 Fed. Appx. 399, 404 (11th Cir. 2007) (unpublished) ("the ALJ need not order an additional consultative examination where the record was sufficient for a decision.").

In this case, Plaintiff is correct that the ALJ did not order a consultative mental examination. However, the record does contain the opinion of State Agency psychologist Dr. Joanna Koulianos, Ph.D., who reviewed Plaintiff's medical records and completed a Psychiatric Review Technique and a Mental RFC Assessment. (Tr. 204, 218). Thus, it is clear that the ALJ complied with 42 U.S.C. § 421(h) in having Dr. Koulianos conduct a review of the medical records and complete a Psychiatric Review Technique and a Mental RFC Assessment.

As noted previously, the record before the ALJ contained the medical records of Plaintiff's primary treating physician, Dr. Sandeep Bhadkamkar, who treated Plaintiff from 2009 to 2012 for all of her impairments (except hearing loss), as well as the consultative report of ENT specialist Dr. Brown related to Plaintiff's hearing loss, the mental RFC assessment and

Psychiatric Review Technique form of State Agency psychologist Dr. Koulianos, and Plaintiff's hearing testimony. This evidence was sufficient to enable the ALJ to determine Plaintiff's mental and physical functional limitations from her impairments, and there is nothing in the record which suggests that Plaintiff's limitations exceed those in the RFC. The ALJ's decision reflects that she had before her sufficient evidence upon which to make the RFC determination, that she thoroughly examined all of the record evidence, and that her determination that Plaintiff can perform a range of light work is supported by substantial evidence. Accordingly, Plaintiff's claim is without merit.

As a final matter, the Court notes that Plaintiff has submitted a letter written by Dr. William S. Harigel, dated April 29, 2014, in which Dr. Harigel states that he began treating Plaintiff on September 14, 2013 for "carotid artery w/o infarction, hyperlipidemia, diabetes, hypertension, and unspecified peripheral vertigo." (Doc. 20 at 2). In the letter, Dr. Harigel states, "[i]t is difficult for the patient to ambulate due to arthritis pain." (Id.). The letter, which was written almost two years *after* the ALJ issued her decision on July 24, 2012, was submitted to the Court, but is not a part of the administrative record because it was never submitted to the Agency.

The sixth sentence of 42 U.S.C. § 405(g) permits a district court to remand an application for benefits to the Commissioner for consideration of new evidence that previously was unavailable. Enix v. Commissioner of Soc. Sec., 461 Fed. Appx. 861, 863 (11th Cir. 2012) (citing 42 U.S.C. § 405(g)). "'[A] sentence six remand is available when evidence not presented to the Commissioner at any stage of the administrative process requires further review.'" Id. (quoting Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253, 1267 (11th Cir. 2007)). "To show that a sentence six remand is needed, the claimant must establish that: (1) there is new, noncumulative evidence; (2) the evidence is material, that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result and (3) there is good cause for the failure to submit the evidence at the administrative level." Id. (quoting Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir.1986) (internal quotation marks omitted)).

"The new evidence must relate to the period on or before the date of the administrative law judge's ("ALJ") decision." Id. (citing Wilson v. Apfel, 179 F.3d 1276, 1279 (11th Cir. 1999) and 20 C.F.R. §§ 404.970(b), 416.1470(b), requiring Appeals Council to consider new evidence "only where it relates to the period on or before the date of the administrative law judge hearing decision"). "Evidence of deterioration of a

previously-considered condition may subsequently entitle a claimant to benefits from a new application, but it is not probative of whether a person is disabled during the specific period under review." Id. (citing Wilson, 179 F.3d at 1279).

"In contrast, evidence of a condition that existed prior to the ALJ's hearing, but was not discovered until afterward, is new and non-cumulative." Id. (citing Vega v. Commissioner of Soc. Sec., 265 F.3d 1214, 1218-19 (11th Cir. 2001) (concluding that remand was warranted based on evidence that after the hearing, a doctor discovered and surgically corrected a herniated disk, which was material to the issue of the severity of claimant's spinal problems during the relevant time period); Hyde v. Bowen, 823 F.2d 456, 459 & n.4 (11th Cir. 1987) (concluding that remand was warranted based on new evidence that claimant's prosthetic device was loose, which, "if accepted" provides "an objective medical explanation" for claimant's previously unexplained complaints of pain in his hip and leg).

In the present case, the evidence proffered by Plaintiff consists of a four-sentence letter from Dr. Harigel listing the medical conditions for which he was treating Plaintiff, some of which were identified during the period in question and some of which were not. More importantly, the only opinion offered by Dr. Harigel in the letter is that Plaintiff has arthritis pain that makes it difficult for her to ambulate. Assuming, without

deciding, that the other elements warranting a sentence six remand are met, Plaintiff has not shown that there is a reasonable possibility that the new evidence would change the administrative result. Indeed, nothing in Dr. Harigel's letter suggests a disabling condition; rather, he merely states that "it is difficult for [Plaintiff] to ambulate due to arthritis pain." (Doc. 20 at 2). Therefore, Plaintiff's new evidence is not material, and a sentence six remand on the basis of new evidence is unwarranted in this case.

### V.    Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **RECOMMENDED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED.**

### Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. L.R. 72.4. The parties should note that under Eleventh Circuit precedent,

"the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's factual findings." Dupree v. Warden, Attorney General, State of Alabama, 715 F.3d 1295, 1300 (11th Cir. 2011). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this **28th** day of **October, 2014.**

                              /s/ SONJA F. BIVINS
                    UNITED STATES MAGISTRATE JUDGE